# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| GREGORY HORD, | : | |
| | : | |
| Plaintiff, | : | Case No. _____ |
| | : | |
| v. | : | |
| | : | JURY DEMAND |
| GENERAL MILLS OPERATIONS, LLC, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

This case concerns the retaliatory and pretextual termination of an eight-year black employee following his report of racially biased and retaliatory treatment by a white supervisor. Despite comparable or more serious infractions by white coworkers, only Hord was fired. He was also the subject of racially explicit harassment in group chats involving HR and leadership. Plaintiff worked at Defendant's Murfreesboro, Tennessee, location until he was terminated for pretextual reasons that sought to hide discriminatory and retaliatory animus. Some of the individuals who engaged in or allowed such behavior against Plaintiff also worked with or were supervised by racist white employees who previously worked at General Mills' Covington facility, which is the cause of thirty plaintiffs filing suit in the Northern District of Georgia, Atlanta Division. A class action with 16 named plaintiffs addressing the pattern and practice of intentional race

discrimination at the Covington facility is pending in the referenced Court as Case No. 1:24-cv-02409-MLB-JKL. There are 16 additional individual lawsuits designated in PACER as related to the class action. [1]

### JURISDICTION AND VENUE

1.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(4), which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protections of civil rights, and pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action arising under the Constitution or laws of the United States. The Court has supplemental jurisdiction over the Tennessee state law claims under 28 U.S.C. § 1367.

2.

Plaintiff asserts claims under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* ("§ 1981"), Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* ("THRA").

---

[1] The plaintiffs' names are Donald Brooks, Gary East, Tamaris Goss, Jimmie Granville, Brandon Hogan, LeTonya Hunter, Yussef Ibrahim, Devahn Jefferson, Kelvin Phillips, Keisha Reed, Titus Reid, Levi Sanders, Joshua Sullivan, Laquanda Turner, Nathan Waters, and Conrad James.

3.

Pursuant to 28 U.S.C. § 1391(b) and § 1391(c), the Nashville Division of this Court is the proper venue for Plaintiff's claims because Defendant is subject to this Court's personal jurisdiction, 28 U.S.C. § 1391(c)(2), and a substantial part of the events or omissions giving rise to the claim occurred within the Nashville Division of this Court.

**PARTIES**

4.

Hord is a black male and former employee of Defendant who worked at General Mills' manufacturing facility in Murfreesboro, Tennessee.

5.

Hord is a resident of the State of Tennessee; he submits himself to the jurisdiction of this Court.

6.

General Mills Operations, LLC ("Defendant" or "General Mills"), is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota, and was properly served by personal service of process upon its registered agent, National Registered Agents, Inc., 289 S. Culver Street, Lawrenceville, Georgia 30046.

3

7.

Defendant is a subsidiary, parent, and/or affiliated corporate entity that, at all relevant times, operated the Yoplait logistics facility in Murfreesboro, Tennessee, and employed Plaintiff.

**ADMINISTRATIVE PROCEEDINGS**

8.

Defendant is a covered employer under Title VII.

9.

Hord timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").

10.

This lawsuit timely filed after the EEOC's issuance of the Notice of the Right to Sue ("NRTS").

11.

Hord made a good faith effort to comply with EEOC regulations and applicable law and to provide all relevant, specific information available.

12.

All conditions precedent to jurisdiction under Title VII have been satisfied.

13.

This suit is timely, appropriate, and valid in all respects.

4

## STATEMENT OF FACTS

### 14.

Hord worked for Defendants from 2016 to March 22, 2024, most recently as a Logistics II Operator on second shift.

### 15.

At the beginning of Plaintiff's time with General Mills, his manager was Joe Buckner, who was in his 20s, hot tempered, and drank a lot. If an employee did not meet his production, Buckner would yell and throw things.

### 16.

Buckner gave Hord a "special corrective action" that held back his pay progression. At first, Buckner told Plaintiff that his pay would be held up for one month, but that was false, and it was actually four months.

### 17.

Buckner told an employee to "shut the fuck up" in front of the whole team, and he was not terminated as he was a white supervisor favored by management.

### 18.

When Plaintiff began working for Yoplait Logistics, his trainer took many days off for vacation and was not available for training but still gave Hord a bad review. As a result, Hord was threatened with having his pay docked.

5

19.

In the summer of 2023, Plaintiff received text messages from his supervisor at the time discussing false feedback that was given about him from harassers and bullies who engaged in racially charged bullying in-person and via text messages. Just the year before, Hord was given an award for having a low error rate and for strong work performance

20.

In November 2023, Hord was singled out by supervisor Ryan Forsythe for "not pulling enough pallets" despite identical performance by a white team member.

21.

Forsythe was a white supervisor favored by management and had been moved from another department to avoid termination.

22.

Forsythe targeted Hord instead of white employees who engaged in the same conduct and did not perform to the same high degree as Hord.

23.

Forsythe targeted Hord for nitpicking and harassment, and he assigned Hord a disproportionately high number of tasks.

6

24.

Forsythe yelled at Hord in an aggressive manner in November 2023 for conduct that another white team member also engaged in.

25.

In late November 2023, Hord complained to corporate HR about discriminatory and aggressive treatment by Forsythe.

26.

HR notified Forsythe of the complaint, and scrutiny, nitpicking, and harassment worsened. Hord received false or exaggerated criticism, and coworkers intensified submitting negative feedback and discriminatory and harassing comments as part of a pattern of retaliation and a retaliatorily hostile work environment.

27.

Hord was mocked in a group chat that included HR coordinator Mike Shouse and a team lead with images included:

- A robed KKK figure edited to include Hord's face;

- A toilet bowl image with Hord's name;

- A "Better Than Greg" award;

- A cartoon of "Fat Albert" with Hord's body; and

- A rainbow dildo placed in a mocking position.

7

28.

Images in the group chat—including a Ku Klux Klan robe with Hord's face—were shared by or in the presence of supervisors and HR personnel. Despite managerial presence, no corrective action was taken. The content was left unaddressed, and management employees joked about it openly.

29.

Despite the involvement of HR, no disciplinary action was taken, and no one received any warnings or counselings.

30.

The same team members who were harassing and bullying Plaintiff reported him to supervisors as having poor work performance. Supervisors were aware of the racially improper ulterior motives but treated the reports against Plaintiff as factual while knowing that they were false.

31.

In March 2024, Hord was terminated for allegedly taking excessive breaks and failing to perform duties over a two-day period. However:

- Hord's non-black counterparts routinely took 1.5-to-2-hour breaks as confirmed in text messages from HR and supervisors, and higher-level managers were aware that employees on Hord's team

8

continuously took breaks in excess of that allowed by official written policy.

- Hord's white teammates took identical breaks but were not disciplined.

32.

On March 13, 2024, just days before termination, Hord was praised by management for perfect scanning accuracy—further disproving the stated legitimate performance basis for termination.

33.

Hord was accused of leaving a "live load" unattended on March 17, 2024, but this accusation was blatantly false as Hord did not violate any policy with the truck, which had arrived early and was processed by Hord at the earliest possible time pursuant to company policy.

34.

Defendants claimed that Jonathan Brown issued six disciplinary steps to Hord on March 17, 2024. But Brown was not at work that day; Hord was never shown the corrective action form; and Hord worked four more days before being fired by phone.

35.

Hord's white coworkers took longer breaks, slept in their cars, and scanned fewer pallets without facing discipline.

36.

The break policy was applied unevenly and with racial animus.

37.

General Mills has failed to discipline supervisors who participated in racist mocking. No investigation was initiated despite internal policies requiring one. Hord received no support, despite documented harassment.

## **COUNT ONE**

### Title VII: Disparate Treatment/Discrimination

38.

Hord repeats and realleges each and every allegation above as it set forth herein in full.

39.

Hord is a member of a class protected by Title VII.

40.

Defendant is a covered employer under Title VII.

41.

Hord suffered adverse employment actions, including termination, despite being qualified for his position.

42.

Hord was treated less favorably than similarly situated employees outside of his protected class, including white employees who received appropriate training and support, who falsified documents intentionally without reprimand, and who were permitted to take longer breaks and therefore complete fewer job duties.

43.

Hord had been subjected to a racially hostile work environment and Defendant was aware of racial comments, actions, and disparate treatment that had been taken against him

44.

Hord's race was a motivating factor for the adverse employment actions taken against him.

45.

Hord asserts a disparate treatment claim pursuant to Title VII.

46.

Hord is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

**COUNT TWO**

Title VII:  Retaliation

47.

Hord repeats and realleges each and every allegation above as it set forth herein in full.

48.

Hord is a member of a class protected by Title VII.

49.

Defendant is a covered employer under Title VII.

50.

Hord engaged in a protected activity when he complained about Forsythe's disparate treatment of him to HR.

51.

In retaliation for Hord's protected activity, Defendant took materially adverse actions against him, including disciplining him, telling the offending supervisors and/or harassers about his complaints, creating a hostile work environment that would have dissuaded a reasonable worker from making

12

complaints of discrimination and harassment, failing to promote him, holding him to a higher standard of conduct than white employees, and taking disparate adverse actions against him, including termination.

52.

Hord's protected activity under Title VII was a motivating factor and but for cause of the adverse employment action taken against him.

53.

Hord asserts a retaliation claim pursuant to Title VII.

54.

Hord is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## **COUNT THREE**

Title VII:  Hostile Work Environment

55.

Hord repeats and realleges each and every allegation above as it set forth herein in full.

56.

Hord was discriminated against and harassed based on his race by General Mills' supervisors and coworkers, including Forsythe and Shouse.

13

57.

The discriminatory statements, threats, and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Hord, were viewed as subjectively hostile and abusive by Hord, and would be viewed as objectively hostile and abusive to a reasonable person.

58.

Hord complained about this discrimination and harassment, and General Mills had actual or constructive knowledge of the ongoing discrimination and/or the harassing conduct was undertaken by and/or condoned by General Mills employees in management roles.

59.

Defendant failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Hord.

60.

Hord asserts a hostile work environment claim pursuant to Title VII.

## COUNT FOUR

42 U.S.C. § 1981:  Race Discrimination

61.

Hord repeats and realleges each and every allegation above as it set forth herein in full.

14

62.

Pursuant to the Civil Rights Act of 1866 –

> All persons within the jurisdiction of the United States shall
> have the same right in every State and Territory to make and
> enforce contracts . . . and to the full and equal benefit of all laws
> and proceedings for the security of persons and property as is
> enjoyed by white citizens, and shall be subject to like
> punishment, pains, penalties, taxes, licenses, and exactions of
> every kind, and to no other.

42 U.S.C. § 1981(a). This provision applies to nongovernmental discrimination. *Id.*
at § 1981(c).

63.

Hord suffered adverse employment actions, including termination, despite
being qualified for his position.

64.

Hord was treated less favorably than similarly situated employees outside
of his protected class, including white employees who received appropriate
training and support, who falsified documents intentionally without reprimand,
and who were permitted to take longer breaks and therefore complete fewer job
duties for the same amount or more pay.

Case 3:25-cv-00740    Document 1    Filed 07/02/25    Page 15 of 25 PageID #: 15

65.

Due to the discriminatory practices of Defendant, black employees' attempts to advance in the company are futile if they in any way oppose racially discriminatory acts or omissions by management or HR.

66.

Hord asserts a disparate treatment claim pursuant to 42 U.S.C. § 1981.

67.

The actions by General Mills described in this Count amount to an ongoing and continuous violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

68.

Hord is entitled to an award of damages against Defendant in an amount equal to all monetary and non-monetary losses he suffered.

## COUNT FIVE

42 U.S.C. § 1981:  Retaliation

69.

Hord repeats and realleges each and every allegation above as it set forth herein in full.

16

70.

Hord engaged in a protected activity when he complained about Forsythe's discriminatorily hostile actions towards him that were not taken against white employees.

71.

In retaliation for Hord's protected activity, Defendant took materially adverse actions against him, including disciplining him, creating a hostile work environment that would have dissuaded a reasonable worker from making complaints of discrimination and harassment, failing to promote him, holding him to a higher standard of conduct than white employees, and taking disparate adverse actions against him, including termination.

72.

Hord asserts a retaliation claim pursuant to 42 U.S.C. § 1981.

### COUNT SIX

42 U.S.C. § 1981: Hostile Work Environment

73.

Hord repeats and realleges each and every allegation above as it set forth herein in full.

74.

Hord was discriminated against and harassed based on his race by General Mills' supervisors and coworkers, including Forsythe and Shouse.

75.

Hord's supervisors and coworkers' discriminatory statements, threats, and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Hord, were viewed as subjectively hostile and abusive by Hord, and would be viewed as objectively hostile and abusive to a reasonable person.

76.

Hord complained about this discrimination and harassment, and General Mills had actual or constructive knowledge of the ongoing discriminations and/or the harassing conduct was undertaken by and/or condoned by General Mills employees in management roles.

77.

Defendant failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

78.

Hord asserts a hostile work environment claim pursuant to 42 U.S.C. § 1981.

## COUNT SEVEN

### THRA Discrimination

### Tenn. Code Ann. § 4-21-101 et seq.

79.

As a black man, Plaintiff is a protected class member under the THRA.

80.

Plaintiff was qualified for the job he held with Defendant.

81.

While employed by Defendant, Plaintiff was subjected to discrimination on the basis of race, including being punished for conduct that white employees engaged in without negative consequences, including job performance and breaks; being retaliated against for complaining of discriminatory and disparate treatment by white supervisor Forsythe; and being terminated for conduct that white employees engaged in without repercussions.

82.

Defendant failed to adequately train and supervise its employees on the laws prohibiting race-based discrimination, as evidenced by the failure to correct the discrimination and harassment Plaintiff experienced (despite Plaintiff's complaints), as well as its disparate treatment of Plaintiff as compared to his white counterparts.

19

83.

By discriminating against Plaintiff because of his race, Defendant violated Plaintiff's state right to be free from discrimination because of race.

84.

As a result of these acts and omissions, Defendant violated the THRA.

85.

As a result of Defendant's violation of the THRA, Plaintiff is entitled to compensatory damages in an amount to be proven at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

## COUNT EIGHT

THRA Retaliation

Tenn. Code Ann. § 4-21-101 et seq.

86.

Plaintiff engaged in protected activity under the THRA when he complained about race discrimination and harassment.

87.

Defendant knew that Plaintiff had engaged in protected activity by reporting his concerns about Forsythe's racially discriminatory behavior.

88.

After Plaintiff reported Forsythe, Defendant failed to take any corrective action but instead informed Forsythe of the complaint, causing him to intensify his nitpicking and harassment of Plaintiff.

89.

By deliberately failing to take reasonable action to prevent and correct the unlawful actions described above and punishing Plaintiff (and not the discriminatory and harassing parties), Defendant created a retaliatorily hostile work environment.

90.

Defendant's retaliatory actions would discourage a reasonable person from reporting workplace discrimination and harassment.

91.

There was a causal connection between Plaintiff's protected activity and the adverse actions described above.

92.

As a result of these acts and omissions, Defendant violated the THRA.

93.

As a result of Defendant's violation of the THRA, Plaintiff is entitled to compensatory damages in an amount to be proven at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

## COUNT NINE

THRA Hostile Work Environment

Tenn. Code Ann. § 4-21-101 et seq.

94.

As a black man, Plaintiff is a protected class member under THRA.

95.

Throughout his employment, Plaintiff was subjected to unwelcome harassment based on his race by Defendant's employees.

96.

The harassment was humiliating and intimidating and was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

97.

Specifically, Plaintiff was subjected to racially offensive, severe, or pervasive insults on various occasions by white employees.

98.

Defendant failed to adequately train and supervise its employees on the laws prohibiting race-based harassment, as evidenced by the failure to correct the harassment Plaintiff experienced, despite its pervasiveness and Plaintiff's complaints.

99.

Because Defendant did not take Plaintiff's complaints seriously and did not take corrective action to resolve his concerns, it tolerated and encouraged a racially hostile working environment.

100.

As a result of these acts and omissions, Defendant violated the THRA.

101.

As a result of these discriminatory acts, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, back pay, interest on back pay, front pay, other equitable relief, and reasonable costs and attorney's fees.

**PRAYER FOR RELIEF**

WHEREFORE, Hord demands a TRIAL BY JURY and the following relief:

(a)  Declaratory judgment that the systemic pattern and practice of racially hostile and discriminatory employment practices that made advancement at the Murfreesboro facility futile and caused

23

catastrophic harm to Hord's career in violation of his § 1981, Title VII, and THRA rights;

(b)     Temporary and permanent injunctive relief, along with this Court's oversight for a reasonable duration implementing lawful employment practices that give minority employees the full benefit of employment at General Mills;

(c)     Full back pay from the date Hord was no longer permitted to work taking into account all raises to which he would have been entitled but for Defendant's unlawful activity, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d)     Reinstatement or front pay to compensate Hord for lost future wages, benefits, and pension;

(e)     Full amount of financial losses caused to Hord as a result of the racist and otherwise unlawful employment practices at the Covington facility;

(f)     Compensatory damages in an amount to be determined by the enlightened conscience of the jury for Hord's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages;

(g)     Award of costs and expenses of this action, together with reasonable attorney and expert fees;

(h)     Punitive damages in an amount to be determined by the enlightened conscience of the jury sufficient to punish Defendant for its conduct toward Hord and deter Defendant from similar conduct in the future;

(i)     Judgment against Defendant for damages incurred by Hord;

(j)     Judgment against Defendant in an amount to fully and adequately compensate Hord;

(k)     An award of pre-judgment and post-judgment interest;

(l)     A trial by jury on all issues triable to a jury; and

(m)    Other and further relief as the Court deems just and proper.

Respectfully submitted this 2nd day of July 2025.


By:     /s/ Jesse Ford Harbison
        Tennessee Bar No. 032105
        Attorney for Plaintiff
        Jesse Harbison Law, PLLC
        Post Office Box 68251
        Nashville, Tennessee  37206
        T:  (629) 201-7284
        E: *jesse@jesseharbisonlaw.com*

25